**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

ROSTISLAW KINDRATIW,

    Plaintiff,

v.                                              Case No: 5:16-cv-438-Oc-30PRL

FAMILY BROODMARES V, LLC,

    Defendant.

**ORDER**

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted and Lack of Subject Matter Jurisdiction (Doc. 13), and Plaintiff's response in opposition (Doc. 16). Having reviewed these filings, the complaint (Doc. 1), and the relevant law, the Court concludes the motion should be granted in part for the reasons below.

**FACTUAL BACKGROUND**

In 2011, Defendant Florida Broodmare V, LLC began selling lifetime breeding rights ("LBRs") in Big Drama, a thoroughbred breeding stallion it owned. Stonewall Farm Ocala, LLC ("Stonewall Farm"), advertised the sale in print, listing Michelle Hemingway as one of Stonewall Farm's "Bloodstock Professionals" to contact about the LBRs. The Stonewall Farm advertisement described buying a Big Drama LBR as a "win-win." It also explained why nothing compared to a Stonewall Farm LBR:

1. There is no obligation to breed your mare. In fact, if you choose not to breed at any time, we will will market your season for you.

…

> 3. If a stallion is sold and you choose to relinquish your LBR, you may be eligible to receive a 200% rebate on your Investment.

(Doc. 1, p. 12). The advertisement also listed a $10,000 stud fee.

In November 2011, Defendant and Plaintiff Rostislaw Kindratiw discussed Plaintiff purchasing a Big Drama LBR. Defendant told Plaintiff that buying an LBR was a "no-brainer" despite Plaintiff not owning any mares or being interested in buying mares to breed with Big Drama. The reason the investment was a no-brainer was that Plaintiff would be entitled to the stud fee on a yearly basis for each certificate as long as Big Drama was alive and fertile.

On December 22, 2011, Plaintiff purchased two LBR Certicates (the "Certificates"). The Certificates transferred an LBR from Defendant to Plaintiff for $32,500 each and were executed by Plaintiff and Michelle Hemingway on behalf of Defendant. Paragraph 4 of the Certificates provides as follows:

> 4. The Lifetime Breeding Right shall be transferable, either by assignment, sale, or trade after the first year of breeding the two (2) qualified mares without penalty and upon written notification to Owner/Seller. Should Purchaser elect not to breed one (1) or both qualified mares within the First year of the Lifetime Breeding Right, Purchaser shall authorize Stonewall Farm Ocala, LLC to utilize the breeding right to one or both mares at the agreed rate of $10,000 and in return guarantees a live foal(s) from such use of the breeding rights, and monetary compensation in the amount of $10,000 if one breeding right is used and $20,000, if both breeding rights are used for the First year. Payment for the use of the Lifetime Breeding Right shall take a Super Priority as stud fees are paid for that year and said Super Priority payment shall be in January, from Owner/Seller of the Lifetime Breeding Right, herein named. Purchaser may after the Second year elect not to breed one (1) qualified mare and receive such monetary compensation deemed Super Priority in January of the Third year of the Lifetime Breeding Right as described above.

After purchasing the Certificates, Plaintiff did not breed any mares in 2012, 2013, or 2014. Defendant paid Plaintiff the advertised stud fee for each of those years. Plaintiff

2

also did not breed any mares in 2015. Defendant, however, refused to pay a stud fee for that year—which was due in January 2016—despite Plaintiff's demand.

On June 29, 2016, Plaintiff filed a five-count complaint in this Court. Count I alleges a violation of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et al.*, over which this Court would have original jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. Counts II and III are for violations of the Florida Securities and Investor Protection Act, §§ 517.011 *et al.*, Florida Statutes. Count IV alleges common law fraud, and Count V alleges breach of contract. Plaintiff alleges the Court has supplemental jurisdiction over the state court causes of action pursuant to 28 U.S.C. § 1367.

## **MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94.

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to

3

"state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

Defendant argues the case should be dismissed because the Certificates do not constitute securities under the Securities Exchange Act, which means this Court lacks subject-matter jurisdiction. In the alternative, Defendant argues the complaint fails to state a claim. The Court concludes it has jurisdiction, but that the fraud count must nonetheless be dismissed without prejudice because Plaintiff failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).

### A. Whether the Certificates Are Securities

In Count I, Plaintiff alleges Defendant violated the Securities Exchange Act. For the Securities Exchange Act to apply, the parties agree that the Certificates have to be securities. Specifically, the parties dispute whether the Certificates are "investment contracts," which are included in the Securities Exchange Act's definition of "security." 15 U.S.C. § 78c(a)(10).[1] Defendant argues that if the Certificates are not investment

---

[1] Plaintiff and Defendant erroneously rely on the definition of a "security" from the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), which also includes an investment contract within the definition of a "security." (Doc. 1, ¶ 15; and Doc. 13, p. 4). The Eleventh Circuit has explained that the definitions of securities in the Securities Act and Securities Exchange Act are intended to be substantially the same. *Villeneuve v. Advanced Bus. Concepts Corp.*, 698 F.2d 1121, 1123–24 (11th Cir. 1983), *reh'g en banc granted, judgment vacated* (Apr. 6, 1983), *on reh'g*, 730 F.2d 1403 (11th Cir. 1984). As such, the Court can consider the cases cited by both Plaintiff and Defendant that interpret whether transactions constituted investment contracts and, thus, securities.

4

contracts—and, therefore, not securities—then the Court lacks original subject-matter jurisdiction over any of Plaintiff's claims and must dismiss this case.

The test for determining whether a transaction is an investment contract was established in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The elements of an investment contract are: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *Id.* at 298–99; *Alunni v. Dev. Res. Grp., LLC*, 445 F. App'x 288, 295 (11th Cir. 2011).[2] Defendant concedes that Plaintiff made an investment of money, but disputes that the Certificates satisfied the remaining elements.

1. **Common enterprise**

In determining whether there has been a common enterprise, the Eleventh Circuit relies on the "broad vertical commonality" test. *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 732 (11th Cir. 2005). "That test requires the movant to 'show that the investors are dependent upon the expertise or efforts of the investment promoter for their returns.' " *Id.* "The thrust of the common enterprise test is that the investors have no desire to perform the chores necessary for a return, and are attracted to the investment solely by the prospects of a return." *Eberhardt v. Waters*, 901 F.2d 1578, 1580–81 (11th Cir. 1990). That each investor's return is independent of each other is not decisive. *S.E.C. v. Unique Fin.*

---

[2] The Eleventh Circuit has also described this test as having four elements: "(1) an investment of money, (2) a common enterprise, *(3) the expectation of profits*, and (4) the expectation of profits to be derived solely from the efforts of others." *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 731–32 (11th Cir. 2005) (emphasis added). The parties do not appear to dispute that Plaintiff had an expectation of profits, however, so the Court need not consider that element.

*Concepts, Inc.*, 196 F.3d 1195, 1199–1200 (11th Cir. 1999) (citing *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 479 (5th Cir.1974)).

Taking the allegations in the complaint as true, the Court concludes the Certificates were a common enterprise. Plaintiff bought the LBRs and expected a return despite having no desire to perform the chores of actually breeding mares to Big Drama or finding a breeder to do so. Rather, Plaintiff could collect a stud fee from Defendant without any action on his part. This means Plaintiff was entirely dependent on Defendant for his returns.

It also appears that Defendant was to receive some benefit from Stonewall Farm if it bred a mare in lieu of Plaintiff.[3] In this sense, Plaintiff's return on his investment was tied to the efficacy of Defendant, another factor weighing in favor of the conclusion the Certificates were part of a common enterprise. *Id.*

In reaching this conclusion, the Court rejects Defendant's argument that this case is akin to *Kefalas v. Bonnie Brae Farms, Inc.*, 630 F. Supp. 6 (E.D. Ky. 1985). The court in *Bonnie Brae* relied on a "horizontal commonality" test to determine whether a common enterprise existed, *Id.* at 8, rather than the "broad vertical commonality" test used in this circuit. The horizontal commonality test required the *Bonnie Brae* court to look at whether there was a common enterprise between the individuals who bought fractions of the stallions, whereas this Court must look to whether there was a common enterprise between Plaintiff and Defendant (and not Plaintiff and other holders of LBR Certificates). As

---

[3] Several facts lead to this reasonable inference. First, Stonewall Farm advertised the LBRs despite Big Drama being owned by Defendant. Michelle Hemingway was listed as a Bloodstock Professional for Stonewall Farm, but also executed the Certificates on behalf of Defendant. Finally, paragraph 4 of the Certificates required Defendant—and not Stonewall Farm—to pay a $10,000 stud fee to Plaintiff if Stonewall Farm bred a mare to Big Drama.

previously explained, that each investor's return is independent is not decisive in this circuit. *Unique Fin. Concepts*, 196 F.3d at 1199–1200. As such, the *Bonnie Brae* court's ruling, albeit on similar facts, is not persuasive given the difference in the tests employed.

### 2. Expectation of profits to be derived solely from the efforts of others

When determining if a plaintiff had an expectation of profits to be derived solely from the efforts of others, this circuit considers the "amount of control that the investors retain[ed] under their written agreements." *ETS Payphones*, 408 F.3d at 732. The touchstone of this element is that the profits "be derived from the entrepreneurial or managerial efforts of others." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852 (1975). "The more control investors retain, the less likely it becomes that the contract qualifies as a security." *ETS Payphones*, 408 F.3d at 732.

The Court concludes this element is also satisfied. Accepting the allegations in the complaint as true, Plaintiff expected to purchase the Certificates and earn a return without any further effort on his part because (1) the Certificates provided that Stonewall Farm would use those rights if Plaintiff did not do so in the first two years and (2) the advertisement stated Plaintiff's season would be marketed for him if he did not breed a mare himself. Further, Defendant was solely responsible for caring for Big Drama. As such, Plaintiff expected to derive profits solely from the entrepreneurial and managerial efforts of others.

In reaching this conclusion, the Court finds *Sheets v. Dziabis*, 738 F. Supp. 307 (N.D. Ind. 1990), persuasive. Like here, the plaintiff in *Sheets* had no expectation of breeding mares to realize a return on his breeding rights. Rather, the *Sheets* agreement provided that a bloodstock agency would find mares to breed or place his seasons in limited

partnerships to assure a return on investment without effort on his part, which the court found satisfied the third element of the *Howey* test. *Id.* at 312. That is similar to the advertisement's offer in this case to market the seasons of LBR purchasers who chose to not breed a mare.

For the above reasons, the Court concludes Plaintiff properly alleged that the Certificates are securities under federal law and stated a claim for relief.[4] Plaintiff alleged that he made an investment in a common enterprise with the expectation of profit to be derived solely from the efforts of others. Accordingly, this Court has original subject-matter jurisdiction over Count I, and can properly exercise supplemental jurisdiction over the state court claims.

### B. Whether Plaintiff Stated a Claim for Common Law Fraud

Defendant also argues Plaintiff failed to meet the Federal Rule of Civil Procedure 9(b) standard for pleading fraud. Defendant argues the complaint only contains vague or facially untrue allegations that are contradicted by the complaint's exhibits. The Court agrees and concludes the common law fraud count should be dismissed without prejudice.

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." To meet this requirement a plaintiff must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such

---

[4] Although not discussed by Defendant, the Court notes that Plaintiff also stated claims in Counts II and III because Florida courts adopted the *Howey* test to determine the existence of an investment contract under Florida securities law. *See Rudd v. State of Florida,* 386 So.2d 1216 (Fla. Dist. Ct. App. 1980).

8

statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Dixon v. Allergan USA, Inc.*, 645 F. App'x 930, 932 (11th Cir. 2016) (citing *Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972 (11th Cir. 2007)).

The issue with the complaint is that the advertisement attached as exhibit A (Doc. 1, p. 12), which Plaintiff alleges was issued by Defendant, purports to be from Stonewall Farm.[5] Stonewall Farm is not the Defendant, and the complaint fails to allege any relationship between the two such that Defendant could be liable for the statements of Stonewall Farm. Plaintiff then continues to generally attribute statements to Defendant without stating who specifically made the statements. This is impermissible.

As the Court noted earlier, it appears that there may be some relationship between Stonewall Farm and Defendant, the bounds of which are unclear. The Court is mindful that Plaintiff may not fully understand that relationship at this stage of the proceedings. However, that does not relieve Plaintiff of his pleading obligations under Rule 9(b). If anything, it makes them all the more important so the parties have fair notice of who made

---

[5] Contrary to Plaintiff's argument that the Court should not consider whether the allegations in the complaint are facially untrue,

> A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls. *See, e.g., Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir.2009) (citing cases). The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself.

*Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). As such, the validity of the allegations is properly before the Court on this motion.

the representations and can narrowly tailor discovery to determine whether those representations are attributable to Defendant.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted and Lack of Subject Matter Jurisdiction (Doc. 13) is GRANTED IN PART.

2. Count IV of the complaint (Doc. 1) is DISMISSED without prejudice.

3. Plaintiff may file an amended complaint within fourteen (14) days of this Order's entry.

4. Defendant shall have fourteen (14) days to answer the amended complaint from the date it is filed. If no amended complaint is filed, Defendant has eighteen (18) days from the date of this Order to answer the complaint.

**DONE** and **ORDERED** in Tampa, Florida, this 27th day of October, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record